## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THERESA LUCERTO,  :   Civ. Action No.: 10-05823-JAP-TJB
  :
        *Plaintiff*,  :
  :
  v.  :
  :
FMR, A/K/A FIDELITY  :
INVESTMENTS, FIDELITY  :
MANAGEMENT TRUST CO.,  :   (New Jersey Superior Court,
        *Defendant*.  :   Law Division, Special Civil Part,
  :   Monmouth County,
  :   Docket No.:  DC-020009-10)
  :
  :   Document Electronically Filed
  :
  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

_____

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT
## PURSUANT TO FED. R. CIV. P. 12(b)(6) AND/OR 56(c)

_____

PROSKAUER ROSE LLP
Alychia L. Buchan
One Newark Center
Newark, New Jersey 07102
(973) 274-3200

*Attorneys for Defendant*
Fidelity Investments
Institutional Operations
Company, Inc.

**RETURN DATE:  JANUARY 18, 2011**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................... ii

I.     PRELIMINARY STATEMENT.................................................1

II.    STATEMENT OF  FACTS ......................................................2

       **A.**    The Parties...............................................................2

       **B.**     Ms. Lucerto's 401(k) Account ..............................2

       **C.**    The Transaction at Issue.........................................3

       **D.**    Ms. Lucerto's IRA Information and Activity .........6

       **E.**    Ms. Lucerto's Complaint .......................................8

III.   ARGUMENT ...........................................................................9

       **A.**    THE APPLICABLE STANDARD ...........................9

             **1.**    Motion to Dismiss...........................................9

             **2.**    Motion for Summary Judgment ...................10

       **B.**    ERISA GOVERNS MS. LUCERTO'S CLAIMS, BECAUSE THEY CONCERN THE ROLLOVER OF HER ACCOUNT FROM A 401(K) PLAN GOVERNED BY ERISA..............................................11

       **C.**    FIDELITY DID NOT BREACH ITS DUTIES, BECAUSE IT ROLLED OVER MS. LUCERTO'S INVESTMENTS ACCORDING TO HER INSTRUCTIONS................................................12

       **D.**    EVEN IF FIDELITY BREACHED ITS DUTIES, IT IS NOT LIABLE BECAUSE IT DID NOT CAUSE MS. LUCERTO'S LOSSES ................................................................14

IV.   CONCLUSION .....................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004)...................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................11

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................9

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ...................................................................9, 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................10

*DiFelice v. Aetna U.S. Healthcare*,
    346 F.3d 442 (3d Cir. 2003) .......................................................................10

*F.W. Webb Co. v. State Street Bank & Trust Co.*,
    No. 09-1241, 2010 U.S. Dist. LEXIS 82759 (S.D.N.Y. Aug. 12, 2010) ...........13

*Falcone v. DLA Piper U.S. LLP Profit Sharing & 401(k) Savings Plan Comm.*,
    No. 09-5555, 2010 U.S. Dist. LEXIS 55770 (N.D. Cal. June 7, 2010) .............13

*Kurtek v. Capital Blue Cross*,
    219 F. App'x 184 (3d Cir. 2007) .................................................................11

*Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004)...................................................................12

*Rogers v. Baxter Int'l, Inc.*,
    710 F. Supp. 2d 722 (N.D. Ill. 2010)...........................................................13

*In re Unisys Sav. Plan Litig*.,
    74 F.3d 420 (3d Cir. 1996) ............................................................14, 16

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007) ................................................................9


STATUTES

15 U.S.C. § 7001(a) ....................................................................................15

29 U.S.C. § 1001 *et seq.*...........................................................................11

29 U.S.C. § 1002(2)(A)...............................................................................11

ERISA § 101(a), 29 U.S.C. § 1021(a) .......................................................14

ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D)...................................12

ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B) ..................................15

ERISA § 409(a), 29 U.S.C. § 1109(a) .......................................................14

Mass. Gen. Laws Ann. ch. 110G, § 7 ......................................................15


OTHER AUTHORITIES

Fed. R. Civ. P. 12.....................................................................................1, 9

Fed. R. Civ. P. 56...................................................................................1, 10

Local Civil Rule 56.1 .................................................................................2

iii

## I.   **PRELIMINARY STATEMENT**

Defendant Fidelity Investments Institutional Operations Company, Inc. ("Fidelity") submits this Memorandum of Law in support of its Motion to Dismiss and/or for Summary Judgment, pursuant to Federal Rules of Civil Procedure 12 and 56, and for dismissal of the complaint of Plaintiff Theresa Lucerto ("Ms. Lucerto").

Ms. Lucerto had a 401(k) account in her employer's retirement plan, for which Fidelity provided directed record-keeping and administrative services.  After Ms. Lucerto's employment terminated, she instructed Fidelity to roll her 401(k) account over to an Individual Retirement Plan ("IRA").  That rollover, and the subsequent losses to Ms. Lucerto's IRA investments, are at issue in this suit.

Ms. Lucerto contends Fidelity breached its duties and violated unspecified state and federal laws by improperly rolling over her 401(k) assets.  She maintains Fidelity should not have rolled over her 401(k) assets "in-kind," *i.e.*, invested in the mutual fund investments from her 401(k) account, because she told Fidelity to roll them over into a "stable and secure IRA whose principal value would not fluctuate."

Fidelity, however, disclosed to Ms. Lucerto that a portion of her investments would roll over "in-kind" and a portion of her assets would be liquidated from her 401(k) prior to her rollover because those investments could not be held in an IRA — and Ms. Lucerto acknowledged that she understood that a portion of her assets would roll over "in-kind" while the remainder of her assets would be liquidated.

Ms. Lucerto could modify her underlying investments in her IRA as she chose.  In any event, Ms. Lucerto's losses were caused by her investment choices and failure to modify them — not Fidelity's rollover.

## II.   STATEMENT OF FACTS

### A.   The Parties

Ms. Lucerto was formerly employed by DHL, where she maintained a 401(k) investment account in the DHL Retirement Savings Plan ("the Plan").  *See* Defendant's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("S.F.") ¶ 1.  Fidelity provided certain record-keeping and administrative services to the Plan, as directed by DHL.  *See* S.F. ¶ 2.

### B.   Ms. Lucerto's 401(k) Account

Under the Plan, participants are responsible for choosing the investments for their 401(k) account assets.  *See* S.F. ¶ 3.  The Plan provides many investment options to participants, who may instruct Fidelity to modify their investment options 24 hours a day, seven days a week, via telephone or internet.  *See* S.F. ¶ 4.

At some point during her employment, Ms. Lucerto affirmatively elected to invest her 401(k) account assets in various mutual funds, including the three funds later rolled over "in-kind" into her IRA.  *See* S.F. ¶ 5.

A participant may instruct Fidelity to roll over her 401(k) account to an IRA when her employment terminates, in which case the participant's investments will be transferred directly to an IRA.  *See* S.F. ¶ 6.

C.   <u>The Transaction at Issue</u>

On March 28, 2008, after the termination of Ms. Lucerto's employment with DHL in February 2008, Ms. Lucerto instructed Fidelity to roll over her 401(k) account assets into an IRA. *See* S.F. ¶ 7. Ms. Lucerto did so by instructing Fidelity, via telephone, to initiate the transfer of assets from her 401(k) account to her IRA, and completing Fidelity's IRA application whereby she consented to its customer and custodial agreements. *See* S.F. ¶ 8.

During her call with Fidelity,[1] Ms. Lucerto indicated that she understood how her 401(k) investments would be rolled over to her IRA. Ms. Lucerto was informed that Fidelity could roll over her 401(k) investments "in-kind," meaning her IRA assets would be in the same mutual funds in which her 401(k) assets were invested(and would not need to be liquidated/sold from her 401(k) then re-purchased in her IRA). *See* S.F. ¶ 13. In fact, Fidelity's phone representative specifically explained to Ms. Lucerto which of her holdings would rollover "in-kind" and which of her holdings would be liquidated and the dollar amount

---

[1]   Fidelity has conducted a diligent search for Ms. Lucerto's records, and all the records Fidelity located were provided to Ms. Lucerto. *See* S.F. ¶ 9. Specifically, on November 20, Ms. Lucerto was provided with the recording of the call during which she instructed Fidelity to process her rollover. *See* S.F. ¶ 10. At the end of the call, it appears Ms. Lucerto was transferred to Fidelity's IRA Department, and Fidelity has been unable to locate that portion of the call, if it occurred. *See* S.F. ¶ 10. That portion, however, is irrelevant to the rollover of Ms. Lucerto's account, because any instructions she provided to the IRA Department could only affect her IRA assets after the rollover. *See* S.F. ¶ 12.

associated with both the in-kind and liquidation transactions and Ms. Lucerto indicated that she understood.  *See* S.F. ¶ 14.  Ms. Lucerto was also informed that, when the assets were transferred to her IRA, she could modify her investments as she desired.  *See* S.F. ¶ 15.  Ms. Lucerto indicated that she understood, and inquired whether there were "international stocks" available as investment options. *See* S.F. ¶ 16.  Fidelity informed Ms. Lucerto that there were, noting that the 401(k) assets she had invested in a certain mutual fund of international stocks would roll over to her IRA in that same fund.  *See* S.F. ¶ 17.  Ms. Lucerto indicated that she understood.  *See* S.F. ¶ 18.

Ms. Lucerto's IRA application mentioned that some of the mutual fund investments from her 401(k) account could be "transferred in kind [and would] not be available for trading in this account until the transfer process has completed." *See* S.F. ¶ 19.

Ms. Lucerto's application did not indicate she desired "stable" or "safe" investments for her IRA; instead, it stated that her "Investment Objective" was "Balanced."  *See* S.F. ¶ 20.  Ms. Lucerto agreed "to notify [Fidelity] in writing anytime there [was] a material change in [her] financial circumstances or investment objectives." *See* S.F. ¶ 21.

Ms. Lucerto's agreements with Fidelity clearly notified her that she was responsible for choosing and monitoring the investments in her IRA.  *See* S.F. ¶ 22.

As with her 401(k) account, Ms. Lucerto could modify her IRA investments 24 hours a day, seven days a week, via telephone or internet. *See* S.F. ¶ 23. Ms. Lucerto's investment instructions to Fidelity were not effective until Fidelity's "actual receipt thereof." *See* S.F. ¶ 24. Additionally, Fidelity was entitled to rely and act upon Ms. Lucerto's instructions, which it may prove via audio recorded tape "or other means." *See* S.F. ¶ 25.

Ms. Lucerto agreed that Fidelity would follow Ms. Lucerto's investment instructions, but would not be liable for losses resulting from Ms. Lucerto's investments. *See* S.F. ¶ 26. Further, Fidelity had "no discretion, authority, or responsibility as to any investment in connection with" Ms. Lucerto's IRA, and that Ms. Lucerto "shall bear sole responsibility for the suitability of any directed investment and for any adverse consequences arising from such investment." *See* S.F. ¶ 27. Additionally, Ms. Lucerto agreed to hold Fidelity "harmless . . . from any and all liability arising from [her] direction . . . and from any and all other liability whatsoever which may arise in connection with this Agreement" unless Fidelity engaged in "gross negligence or willful misconduct." *See* S.F. ¶ 28.

Ms. Lucerto was notified that Fidelity would send her quarterly IRA statements, and she agreed to receive those statements electronically. *See* S.F. ¶ 29. The email address listed on Ms. Lucerto's application is Ms. Lucerto's current email address. *See* S.F. ¶ 30. Ms. Lucerto was deemed to have received her IRA

statements when they were "delivered or provided to her last known address, including an electronic address." *See* S.F. ¶ 31.  Additionally, Ms. Lucerto was "deemed to have approved of" each account statement, and she agreed that Fidelity would "be forever released and discharged from all liability and accountability to anyone with respect to their acts, transactions, duties and responsibilities as shown on or reflected by such statement," unless Ms. Lucerto sent Fidelity a written objection to that statement within 90 days.  *See* S.F. ¶ 32.

### D.   Ms. Lucerto's IRA Information and Activity

On March 28, in accordance with Ms. Lucerto's IRA application and telephonic instructions, Ms. Lucerto's IRA was created.  *See* S.F. ¶ 33.  Most of her IRA assets ($15,642.57 of $23,162.34) remained invested in the three mutual funds she had chosen for her 401(k) account assets.  *See* S.F. ¶ 34. (The rest of her IRA assets ($7,519.77) were invested in a "cash reserve" fund that did not subsequently lose value and are not at issue here.  *See* S.F. ¶ 35.)

Within a week of the rollover, Fidelity sent Ms. Lucerto her first IRA statement.  *See* S.F. ¶ 37.  Thereafter, Fidelity sent Ms. Lucerto quarterly statements for her IRA.  *See* S.F. ¶ 36.  Each of these statments instructed her to review them and notify Fidelity of any inaccuracies.  *See* S.F. ¶ 36.  Ms. Lucerto's April 1, 2008, statement clearly showed that $15,706.68 of Ms. Lucerto's IRA was invested in three separate mutual funds, and reflected a $23,226.45 IRA balance.  *See* S.F. ¶ 38.

Fidelity sent Ms. Lucerto three more statements, for July 1, 2008, October 1, 2008, and January 1, 2009, which clearly showed her investments in the three mutual funds. *See* S.F. ¶ 39. Her July statement reflected that her mutual fund investments had increased in value, to $15,948.27, and that her new balance was $23,517.82. *See* S.F. ¶ 40. Her October statement showed that her mutual fund investments had decreased in value, to $12,796.45, and that her new balance was $20,413.00. *See* S.F. ¶ 41. Her January statement reflected that her mutual fund investments had decreased further in value, to $9,635.89, and that her new balance was $17,299.39. *See* S.F. ¶ 42.

On February 23, 2009, Ms. Lucerto called Fidelity to complain, contending, as she does now, that she directed Fidelity to roll her 401(k) account over into a stable IRA that would not lose value. *See* S.F. ¶ 43. That claim, and the allegations set forth in Ms. Lucerto's complaint, demonstrate that she is perhaps under the misimpression that an IRA is itself a type of investment vehicle. It is not. An IRA is an individual account in which the customer herself must select and direct the investment of the underlying assets therein. Fidelity explained that the rollover was processed according to Ms. Lucerto's instructions. *See* S.F. ¶ 44. On February 25, 2009, Ms. Lucerto sold her IRA's investments, which had declined in value by $7,313.94 (from $15,632.57 to $8,328.63). *See* S.F. ¶ 45.

### E.   <u>Ms. Lucerto's Complaint</u>

Ms. Lucerto filed her complaint, *pro se*, in state court on September 28, 2010. *See* S.F. ¶ 46.  Ms. Lucerto's complaint alleges that Fidelity "had a contractual and fiduciary duty to Plaintiff to manage and maintain Plaintiff's 401K, and to roll over said 401K to an IRA account as directed by Plaintiff," in other words, "to a stable and secure IRA whose principal value would not fluctuate and would be preserved." *See* S.F. ¶ 47.  Ms. Lucerto contends Fidelity "rolled Plaintiff's 401K to a speculative IRA against Plaintiff's direction and in violation of numerous State and Federal laws and regulations."[2]  *See* S.F. ¶ 48.  Ms. Lucerto demands actual damages, punitive damages, and statutory awards of at least $15,000 — well in excess of her IRA's investment losses —  plus interest and $500 in costs.  *See* S.F. ¶ 49.

Fidelity received Ms. Lucerto's complaint on October 11, 2010, and removed the case to this court on November 9, 2010.  *See* S.F. ¶ 50.

---

[2]      Ms. Lucerto has not alleged that she instructed Fidelity to modify her IRA investments, and, despite a diligent effort, Fidelity has been unable to locate any such instructions.  *See* S.F. ¶ 44.

## III.   ARGUMENT

### A.   THE APPLICABLE STANDARD

#### 1.   Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).   "[W]hen the allegations in a complaint, however true, [can]not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal citations omitted).

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (quoting *Twombly*, 550 U.S. at 570).   Factual allegations that are "merely consistent with a defendant's liability," as opposed to providing "content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).   Thus, "[i]n deciding a motion to dismiss, a court . . . need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997); *see also Iqbal* 129 S. Ct. 1949-50.

In evaluating the sufficiency of the factual allegations, a court may consider the complaint as well as any "document integral to or explicitly relied upon in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426. Here, the court may consider the Plan's , as well as Ms. Lucerto's investment account statements and IRA application and agreements, because they are integral to Ms. Lucerto's complaint; and the court may also consider Ms. Lucerto's rollover instructions to Fidelity because they are explicitly relied upon in her complaint. *See, e.g., DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 444 n.2 (3d Cir. 2003) (explaining that health insurance plan could be considered on motion to dismiss, where its terms were referenced by the complaint) (citation omitted).

## 2.    Motion for Summary Judgment

Summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P*. 56(c). Summary judgment provides a procedure whereby unfounded claims can be eliminated without recourse to a costly, lengthy and unnecessary trial. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting *Fed. R. Civ. P.* 1).

To carry its initial summary judgment burden, Fidelity must show "an absence of evidence to support [Ms. Lucerto]'s case." *Id.* at 324. Fidelity need only show the absence of proof on any of the essential elements. *Id.* at 323. Once a properly supported motion for summary judgment has been made, the burden shifts to Ms. Lucerto to "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P.* 56(e). Ms. Lucerto must present "concrete evidence from which a reasonable [fact-finder] would return a verdict in h[er] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### B. ERISA GOVERNS MS. LUCERTO'S CLAIMS, BECAUSE THEY CONCERN THE ROLLOVER OF HER ACCOUNT FROM A 401(K) PLAN GOVERNED BY ERISA

Ms. Lucerto's claims concern the manner in which Fidelity rolled over her 401(k) account, specifically, that its mutual fund investments were rolled over "in-kind" to her IRA.

Ms. Lucerto's 401(k) account was part of her employer's retirement plan, which is an "employee pension benefit plan" governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* *See* 29 U.S.C. § 1002(2)(A). As such, any state law claims that "relate to" the Plan are preempted, and Ms. Lucerto's exclusive remedy is a breach of fiduciary duty claim under ERISA. *See, e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *Kurtek v. Capital Blue Cross*, 219 F. App'x 184, 186-87 (3d Cir. 2007) (holding

state law claim challenging plan administration (specifically, the delay in awarding benefits) was completely preempted); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (explaining, "ERISA's civil enforcement mechanism, § 502(a), is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim . . . .") (citation and internal quotation marks omitted).

### C.   FIDELITY DID NOT BREACH ITS DUTIES, BECAUSE IT ROLLED OVER MS. LUCERTO'S INVESTMENTS ACCORDING TO HER INSTRUCTIONS

As Ms. Lucerto alleges, Fidelity had a duty to roll over her 401(k) account as she directed.  Ms. Lucerto also alleges, however, that she directed Fidelity to roll over her 401(k) account "to a stable and secure IRA whose principal value would not fluctuate and would be preserved."  Comp. ¶¶ 1, 3.  To the contrary, Ms. Lucerto directed Fidelity to roll over her 401(k) account in the exact manner that Fidelity rolled it over.  *See* S.F. ¶¶ 6, 12-13, 16-17, 32-34.

Under ERISA, the Plan must be administered pursuant to its terms.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan . . . .").  Here, the Plan provided that Ms. Lucerto was responsible for instructing Fidelity to modify her investments, and Fidelity would

follow those instructions.  *See* S.F. ¶ 4.  Accordingly, Fidelity did not breach its duty by following Ms. Lucerto's instructions.  *See, e.g., Rogers v. Baxter Int'l, Inc.,* 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010) ("Plan fiduciaries were obligated to obey the investment instructions of participants, and so are not liable for any resulting losses which were caused by participants', not the fiduciaries', decisions."); *F.W. Webb Co. v. State Street Bank & Trust Co.*, No. 09-1241, 2010 U.S. Dist. LEXIS 82759, at *42-43 (S.D.N.Y. Aug. 12, 2010) (holding there was no breach of duty in following investment instructions from plan).  *Cf. Falcone v. DLA Piper U.S. LLP Profit Sharing & 401(k) Savings Plan Comm.*, No.  09-5555, 2010 U.S. Dist. LEXIS 55770, at *14 (N.D. Cal. June 7, 2010) (holding plan participant stated a claim for breach of fiduciary duty against plan administrator for failing to follow his instructions).

As Fidelity explained to Ms. Lucerto, Ms. Lucerto could instruct Fidelity to roll over her 401(k) account's assets, but they would remain invested in the same investments when they rolled over into an IRA.  *See* S.F. ¶¶ 6, 12.  Fidelity could not modify them as part of the rollover; Ms. Lucerto was responsible for instructing Fidelity to modify those investments (before or after the rollover). When Fidelity explained this to Ms. Lucerto at the time she initiated her rollover,

she indicated that she understood and agreed.[3]  *See* S.F. ¶ 13.

In sum, Fidelity did not breach any duties by rolling over "in kind" the mutual fund investments from Ms. Lucerto's 401(k) account according to her instructions.

### D.   **EVEN IF FIDELITY BREACHED ITS DUTIES, IT IS NOT LIABLE BECAUSE IT DID NOT CAUSE MS. LUCERTO'S LOSSES**

Ms. Lucerto complains that, after the rollover, her IRA declined in value. That decline, however, was caused by Ms. Lucerto's original investment choices — not Fidelity's rollover.

A fiduciary is liable only for losses caused by its breach; if the breach caused no loss, there is no liability.  ERISA § 409(a), 29 U.S.C. § 1109(a) ("Any person who . . . breaches [his or her fiduciary duty] shall be . . . liable to make good to such plan any such losses to the plan *resulting from each such breach*") (emphasis added); *see, e.g.*, *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443 & n.20 (3d Cir. 1996) ("Generally speaking, ERISA holds fiduciaries who commit breaches of duty liable for *resulting* losses.") (emphasis added), *on remand*, 1997 U.S. Dist. LEXIS 19198, at *90-92 (E.D. Penn. 1997) (holding defendant was not

---

[3]    Ms. Lucerto's complaint also mentions that Fidelity had not yet provided her with a recording of her call with Fidelity.  Fidelity has provided a recording of this call to Ms.  Lucerto, even though it was not obligated to do so.  *See ERISA* § 101(a), 29 U.S.C. § 1021(a) (requiring SPD, annual report, and benefits statements to be provided to participants by plan administrator).

liable for participants' investment loss because, *inter alia*, plaintiff failed to prove that any loss was caused by alleged breach), *aff'd*, 173 F.3d 145 (3d Cir. 1999).

Here, Fidelity's rollover did not cause Ms. Lucerto's ultimate investment losses. Fidelity rolled over Ms. Lucerto's 401(k) investments to an IRA, and those investments rose in value over the next three months. Accordingly, Fidelity's rollover did not cause Ms. Lucerto's subsequent investment losses.

To the contrary, the losses to Ms. Lucerto's IRA resulted from her selection and retention of the three mutual fund investments as to which she now complains. According to the Plan and her contractual agreements with Fidelity, Ms. Lucerto — not Fidelity — was responsible for choosing her investments, monitoring her account and its quarterly statements, and notifying Fidelity if her statements did not reflect the investments she desired or the choices she made. *See* 15 U.S.C. § 7001(a) (establishing that electronic signatures and contracts are valid and binding); Mass. Gen. Laws Ann. ch. 110G, § 7 (same). Thus, Ms. Lucerto's control over her investments caused her losses.

Along that line, ERISA explicitly provides that a fiduciary is not liable for losses that result from a participant's investment choices. ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B) ("In the case of a [401(k)] plan which . . . permits a participant . . . to exercise control over the assets in his account . . . no person . . . shall be liable . . . for any loss . . . which results from such participant's . . .

exercise of control."); *e.g.*, *In re Unisys Sav. Plan Litig.*, 74 F.3d at 443-46 (interpreting ERISA § 404(c), explaining, where participants chose to invest in an allegedly imprudent investment option, fiduciaries are not liable if a participant's investment choices were the cause-in-fact and a substantial contributing factor of the loss, but reversing summary judgment for defendants where record was unclear on circumstances of participants' choices); *on remand*, 1997 U.S. Dist. LEXIS 19198, at *92-95 (holding defendant was not liable for plaintiffs' investment loss because, *inter alia*, ERISA § 404(c) excused any liability because participants chose their investments), *aff'd on other grounds*, 173 F.3d 145.

As such, even if Fidelity breached its duties (which it did not), it is not liable under ERISA because it did not cause Ms. Lucerto's losses.[4]

---

[4]   Likewise, there is no viable claim regarding the investments in Ms. Lucerto's IRA, since Fidelity regularly informed her of those investments, and she could review and re-allocate them at any time. *See* S.F. ¶21, 23-27. Starting one week after her rollover, Fidelity provided Ms. Lucerto all relevant information about her investment allocations; thereafter, Fidelity provided quarterly account statements to Ms. Lucerto via email, in accordance with her instructions. *See* S.F. ¶¶ 28-30, 35-42. *Cf. Travis v. Vanguard Group, Inc.*, 2008 U.S. Dist. LEXIS 39425, at *6-13 (E.D. Pa. May 15, 2008) (holding monthly statements gave plaintiff notice of investments). In her rollover agreement, Ms. Lucerto assumed a duty to monitor her investments and to modify them as appropriate, and accepted sole responsibility for investment losses. *See* S.F. ¶¶ 19-21, 26-27. In addition to 24-hour online access, Ms. Lucerto had the option of adjusting her investments by telephone – an option as to which Ms. Lucerto demonstrated her understanding when she made the initial rollover call. *See* S.F. ¶¶ 9, 22. Accordingly, Ms. Lucerto has no claim against Fidelity for losses in her IRA account after the rollover. *See, e.g., McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 767 (3d Cir. 1990) (rejecting fiduciary-duty claim against non-discretionary broker); *Patsos*

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Fidelity is not liable for the losses to Ms. Lucerto's IRA, and the court should grant this motion to dismiss and/or for summary judgment, dismissing Ms. Lucerto's complaint with prejudice.

Respectfully submitted,

PROSKAUER ROSE LLP

By:     s/  Alychia L. Buchan
            Alychia L. Buchan
            One Newark Center
            Newark, New Jersey  07102-5211
            Phone: 973.274.3200
            Fax:  973.274.3299
            abuchan@proskauer.com
            *Attorneys for Defendant*

Dated:  December 14, 2010

---

*v. First Albany Corp.*, 741 N.E.2d 841, 856 (Mass. 2001) (same); *Stewart v. J.P. Morgan Chase & Co*., 2004 U.S. Dist. LEXIS 16114 (S.D.N.Y. 2004) (rejecting tort and contract claims against non-discretionary account manager).