NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THERESA LUCERTO, <br><br> Plaintiff, <br><br> v. <br><br> FMR a/k/a FIDELITY INVESTMENTS, et al., <br><br> Defendants. | Civil Action No. 10-5823 (JAP) <br><br> **OPINION** |

PISANO, District Judge.

Plaintiff Theresa Lucerto, proceeding *pro se*, brings this action against Fidelity Investments Institutional Operations Company, Inc. ("Fidelity"), pled as "FMR, a/k/a Fidelity Investments, Fidelity Management Trust Co.", alleging that Fidelity improperly serviced her retirement plan assets. Presently before the Court is a motion by Fidelity to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and/or for summary judgment under Rule 56. Because in resolving the motion the Court relies upon materials outside of the pleadings, the Court shall address it as a motion for summary judgment. Plaintiff has not opposed the motion.[1] For the reasons below, Fidelity's motion shall be granted.

**I. Background**

The Court finds that the following facts are supported by the evidence of record and are undisputed:

---

[1] Plaintiff advised Magistrate Judge Bongiovanni that she would not be filing opposition to the motion.

Plaintiff was formerly employed by DHL, where she maintained a 401(k) investment account in the DHL Retirement Savings Plan ("the Plan"). *See* Complaint ("Comp.") ¶ 4-5; *see also* Declaration of Michael Zwirko ("Zwirko Decl."), Ex. 1 (Summary Plan Description ("SPD") for the Plan), Ex. 2 (Plaintiff's last 401(k) account statement from the Plan). Fidelity provided certain record-keeping and administrative services to the Plan, as directed by DHL. Comp. ¶ 1, 5; Zwirko Decl. ¶ 3.

Under the Plan, participants may choose the investments for their 401(k) account assets from many investment options. Zwirko Decl., Ex. 1 (SPD) at 11. At some point during her employment, Plaintiff affirmatively elected to invest her 401(k) account assets in various mutual funds. *See id.*, Ex. 2 (Plaintiff's last 401(k) account statement from the Plan); *Id.*, Ex, 1 at 11 (SPD, showing that 401(k) assets would be invested in the "Fidelity Freedom Fund" if no other investment was specified).

Upon termination employment with DHL, a participant in the Plan may instruct Fidelity to roll over a 401(k) account to an IRA, in which case the participant's investments would be transferred directly to the IRA. *See id.* ¶ 4 and Ex. 1 (SPD) at 7. On March 28, 2008, after the termination of Plaintiff's employment with DHL in February 2008, Plaintiff instructed Fidelity to roll over her 401(k) account assets into an IRA. *Id.*, Ex. 3 at lines 167-75, 183-84, 218-31, 241-53 (transcript of Plaintiff's call to Fidelity, directing her 401(k) account to be rolled over). Plaintiff did so by instructing Fidelity, via telephone, to initiate the transfer of assets from her 401(k) account to her IRA, and completing Fidelity's IRA application whereby she consented to its customer and custodial agreements. *Id.*, Ex. 3 at lines 167-75, 183-84, 218-31, 241-53, Ex. 5 (Plaintiff's IRA application) at 3 (acknowledging agreement to the Fidelity Brokerage Retirement Customer Account Agreement, Fidelity IRA Custodial Agreement, and Fidelity IRA Disclosure Statement); *see also id.*, Ex. 6 (Fidelity Brokerage Retirement Customer Account

Agreement), Ex. 7 (Fidelity IRA Custodial Agreement); Ex. 8 (Fidelity IRA Disclosure Statement).

During Plaintiff's call with Fidelity, Plaintiff was informed that Fidelity could roll over her 401(k) investments "in-kind," meaning her IRA assets would be in the same mutual funds in which her 401(k) assets were invested. *Id.*, Ex. 3 at lines 142-67, 220-31. Fidelity's phone representative specifically explained to Plaintiff which of her holdings would rollover "in-kind", which of her holdings would be liquidated, and the dollar amount associated with both the in-kind and liquidation transactions and Plaintiff indicated that she understood. *Id.*, Ex. 3 at lines 142-67, 220-231. Plaintiff was also informed that, when the assets were transferred to her IRA, she could modify her investments as she desired. *Id.*, Ex. 3 at lines 148-55, 230-31.

> FIDELITY: Now the amount that is going to rollover is $23, 225.77.
>
> LUCERTO: Ok, is there anytime I should wait for this, I mean, is it going to go up or is, like what happens?
>
> FIDELITY: Well some of your stock is going to roll over in kind like your Fidelity Growth, your Fidelity Diversified International, and the Rainier Small MidCap is all going to be moved over in kind.
>
> LUCERTO: Ok.
>
> FIDELITY: About $7,526.46 is going to be cashed out and actually rollover into a cash account.
>
> LUCERTO: Ok.
>
> FIDELITY: Once it's in there, you can actually pick your investment options.
>
> LUCERTO: Ok, I got ya.

Zwirko Decl., Ex. 3 at lines 220-231.

On March 28, as per Plaintiff's IRA application and telephonic instructions, Ms. Lucerto's IRA was created. *See id.*, Ex. 4 (April 1, 2008 IRA statement) at 2- 3. When Plaintiff's IRA was created on March 28, 2008, most of her IRA assets ($15,642.57 of

3

$23,162.34) remained invested in the three mutual funds she had chosen for her 401(k) account assets. *Id.*, Ex. 4 at 2-3. 35. The rest of her IRA assets ($7,519.77) were invested in a "cash reserve" fund that did not subsequently lose value. *Id.*, Ex. 4 at 2-3.

At least once every three months, Fidelity sent Plaintiff statements for her IRA. *Id.*, Ex. 4, at 4 (Plaintiff's April 1, 2008 IRA statement), Exs. 9-13 (Plaintiff's April 1, 2008, July 1, 2008, October 1, 2008, January 1, 2009, and April 30, 2009 IRA statements).  Within a week of the rollover, Fidelity sent Plaintiff her first IRA statement. *Id.*, Ex. 4 (April 1, 2008 IRA statement).  That April 1, 2008, statement showed that $15,706.68 of Plaintiff's IRA was invested in three separate mutual funds, and reflected a $23,226.45 IRA balance. *Id.*, Ex. 4, at 1. Her July statement reflected that her mutual fund investments had increased in value, to $15,948.27, and that her new balance was $23,517.82. *Id.*, Ex. 9, at 1.  Her October statement showed that her mutual fund investments had decreased in value, to $12,796.45, and that her new balance was $20,413.00. *Id.*, Ex. 10 at 1.  Plaintiff's January 2009 statement reflected that her mutual fund investments had decreased further in value, to $9,635.89, and that her new IRA balance was $17,299.39. *Id.*, Ex. 11 at 1.

On February 23, 2009, Plaintiff called Fidelity, contending, as she does in her complaint, that she directed Fidelity to roll her 401(k) account over into a stable IRA that would not lose value. *Id.*, Ex. 14 at lines 18-27, 82-83, 252-53 (transcript of audio recording of February 23, 2009, call).  A short time later, on February 25, 2009, Plaintiff sold her IRA's investments for $8,328.63. *See* Zwirko Decl., Ex. 12 (April 1, 2009 statement) at 2.

Plaintiff filed her complaint in the Superior Court of New Jersey alleging that Fidelity "rolled Plaintiff's 401K to a speculative IRA against Plaintiff's direction and in violation of numerous State and Federal laws and regulations."  Comp. ¶¶ 6-7.  She contends Fidelity "had a contractual and fiduciary duty to Plaintiff to manage and maintain Plaintiff's 401K, and to roll

4

over said 401K to an IRA account as directed by Plaintiff." *Id.* ¶ 3.  She alleges that she directed Fidelity to roll over her entire 401(k) "to a stable and secure IRA whose principal value would not fluctuate and would be preserved," *id.* ¶ 1, but instead, Fidelity "negligently," "intentionally" and "unlawfully" rolled Plaintiff's 401(k) "to a speculative IRA," *id.*, ¶¶ 6, 7.

Defendant removed the matter to this Court in November 2010.  This motion followed.

## II.  Analysis

Plaintiff's failure to respond to Fidelity's motion does not automatically entitle Plaintiff to summary judgment on its claims.  Rather, where the non-moving party fails to respond, the Court may enter summary judgment in favor of the moving party only if the moving party has established that summary judgment is appropriate.  *See Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990); Fed. R. Civ. P. 56(e) (3) ("If a party fails to … properly address another party's assertion of fact … the court may … grant summary judgment if the motion and supporting materials … show that the movant is entitled to it.")  Accordingly, the Court reviews Fidelity's motion and supporting evidence order to determine whether Fidelity is entitled to judgment on those claims as a matter of law.

A.  The Summary Judgment Standard

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies which facts are critical or "material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party.  *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. The non-moving party must then offer admissible evidence that establishes a genuine issue of material fact, id., not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

B.  The Undisputed Facts Show That Fidelity is Entitled To Summary Judgment

Plaintiff is correct in her assertion that Fidelity had a duty to roll over her 401(k) account as she directed. As Fidelity points out, under the Employee Retirement Income Security Act ("ERISA"), the Plan must be administered pursuant to its terms. 29 U.S.C. § 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan . . . ."). Here, the Plan provided that a participant can instruct Fidelity to roll over a 401(k) account to an IRA when his or her employment terminates. SPD at 7.

Plaintiff alleges that she directed Fidelity to roll over her 401(k) account "to a stable and secure IRA whose principal value would not fluctuate and would be preserved" and that Fidelity failed to follow those instructions. Comp. ¶¶ 1, 3. However, the undisputed facts show that,

6

contrary to Plaintiff's assertions, Plaintiff directed Fidelity to roll over her 401(k) account in the exact manner that Fidelity rolled it over.  Accordingly, as Fidelity did not deviate from Plaintiff's express direction, Plaintiff has not shown that Fidelity breached any duty to her.  *See, e.g., Rogers v. Baxter Int'l, Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010) ("Plan fiduciaries were obligated to obey the investment instructions of participants, and so are not liable for any resulting losses which were caused by participants', not the fiduciaries', decisions."); *F.W. Webb Co. v. State Street Bank & Trust Co.*, No. 09-1241, 2010 U.S. Dist. LEXIS 82759, at *42-43 (S.D.N.Y. Aug. 12, 2010) (holding there was no breach of duty in following investment instructions from plan). *Cf. Falcone v. DLA Piper U.S. LLP Profit Sharing & 401(k) Savings Plan Comm.*, No. 09-5555, 2010 WL 2280543, at *5 (N.D. Cal. June 7, 2010) (holding plan participant stated a claim for breach of fiduciary duty against plan administrator for failing to follow his instructions).  Nor has Plaintiff shown, as she alleges, that Fidelity's action violated any state or federal statutes or regulations.  As such, Fidelity's motion is granted.

### III.  Conclusion

For the reasons above, Fidelity's motion for summary judgment is granted.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated:  March 7, 2011